**[This opinion has been published in *Ohio Official Reports* at 83 Ohio St.3d 7.]**

OFFICE OF DISCIPLINARY COUNSEL *v.* MAXWELL.

**[Cite as *Disciplinary Counsel v. Maxwell*, 1998-Ohio-419.]**

*Attorneys at law—Misconduct—Two-year suspension with one year of sanction stayed on conditions—Engaging in illegal conduct involving moral turpitude—Engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation—Engaging in conduct prejudicial to the administration of justice—Engaging in conduct adversely reflecting on fitness to practice law—Neglect of an entrusted legal matter—Failing to seek lawful objectives of client—Failing to carry out contract of employment—Making false statement of law or fact—Disregarding rule or ruling of a tribunal— Failing to pay or deliver funds, securities, or other properties at request of client that client is entitled to have.*

(No. 97-2185—Submitted May 13, 1998—Decided August 12, 1998.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 95-88.

———————————

{¶ 1} On May 30, 1997, relator, Office of Disciplinary Counsel, filed a nineteen-count amended complaint charging respondent, David Clay Maxwell of Granville, Ohio, Attorney Registration No. 0039122, with numerous violations of the Disciplinary Rules and Gov.Bar R. V(4)(G) (no attorney shall neglect or refuse to assist in a disciplinary investigation). After respondent filed an answer, a panel of the Board of Commissioners on Grievances and Discipline ("board") received the stipulations of the parties and heard evidence in mitigation.

{¶ 2} The panel found with respect to count one of the complaint that in order that her grandchild be able to continue school in Licking County, Ruth Knepper employed respondent in 1994 to effect a temporary change of custody of

the grandchild to her. Although the child's North Carolina resident parents consented to the change in custody, respondent, without notifying the parents, signed their names to a waiver of service, notarized the signatures, and filed the document with the common pleas court.

{¶ 3} With respect to counts two, three, and four, the panel found that after having accepted appointment as appellate counsel for William Graham in June 1994, respondent took no action on his behalf and, as a result, Graham's appeal was dismissed in November 1994. From January 1995 through March 1995, respondent failed to honor his repeated promises that he would respond to relator's inquiry about a grievance filed by Graham, and failed to produce his file on Graham as ordered by a subpoena *duces tecum.*

{¶ 4} The panel found in considering count five that in 1995 respondent received but failed to reply to relator's letters of inquiry about a grievance filed against him by Gerald Vom Baur II. The panel found in considering count thirteen that in 1996, respondent received but failed to reply to relator's inquiry about a grievance filed by Scott Donnelley.

{¶ 5} The panel found with respect to counts six and seven that when respondent was employed to change the custody of Julian Hess from his natural parents to his clients, Willard and Julia Watkins, the natural grandparents, he forged the signatures of the grandparents to the complaint, forged the signatures of the parents to a waiver of service of complaint and a consent to custody decree, notarized all the signatures he had forged, and filed the documents with the court. Respondent then failed to reply to relator's attempt to investigate the Hess matter after a grievance was filed by the Director of Administrative Services for Licking County.

{¶ 6} The panel found with respect to counts eight and nine that in 1994, James Watts employed respondent to appeal the decision in his divorce action. Respondent filed a notice of appeal but did not file a timely appellate brief. When

Watts wrote to respondent discharging him, respondent filed a motion for leave to file a brief out of time. The motion was denied. Respondent did not reply to relator's attempts to investigate the grievance filed by Watts.

{¶ 7} The panel found with respect to count ten that respondent, having been employed to represent George Smith, failed to appear at a case management conference or notify the court that he was unable to appear. As a result, it was necessary for the court to issue an order for respondent to appear in order to hold a hearing. The panel found under count eleven that Pamela Napper's child custody case was dismissed when respondent, as her attorney, neglected to file a child custody affidavit although ordered to do so by the magistrate and failed to appear at a show cause hearing to explain why the affidavit was not filed.

{¶ 8} With respect to count twelve, the panel found that in 1995 while representing Angela Fuller in a divorce action, respondent prepared a motion to set aside a settlement memorandum and served it on opposing counsel but did not file it with the court. As a result, opposing counsel's memorandum contra could not be filed. In response to a court order after a hearing, respondent filed the motion six weeks after it was originally served.

{¶ 9} In considering counts fourteen, fifteen, and sixteen, the panel found that, having been engaged to defend Carl and Ronald Smith in a suit for money damages, respondent entered into a settlement agreement on behalf of the Smiths. Respondent represented to opposing counsel that he had settlement authority. When the Smiths rejected the settlement and discharged respondent, the plaintiff sued the defendants for breach of the settlement agreement and the Smiths joined respondent as a third-party defendant. During this second suit, respondent failed to respond to the request of the Smiths' new counsel that he turn over the Smith file, failed to respond to a request for production of documents filed in the case, and failed to respond to a court order compelling the production of the documents. Prior to a hearing on a motion for sanctions against respondent, the case was settled and

respondent agreed to pay $5,000 to the plaintiff. Respondent did not reply to relator's attempts to investigate the grievance filed by Carl Smith.

{¶ 10} The panel found in count seventeen that respondent agreed to undertake a collection case referred to him by attorney James J. Herr in 1995 or 1996, but after receiving $150 from Herr, respondent neglected to communicate with Herr about the case.

{¶ 11} With respect to counts eighteen and nineteen, the panel found that in 1995 Richard Hagemann retained respondent to appeal his driver's license suspension. When Hagemann later inquired about the status of the appeal, respondent supplied him with a "Report of Court Action," which appeared to give Hagemann limited driving privileges. In fact, respondent had not filed the appeal and had manufactured the "Report of Court Action." Respondent finally filed the appeal two days after Hagemann was arrested for speeding while driving on the basis of the "report" manufactured by respondent. Hagemann was then arrested for driving while his license was under suspension. Respondent did not reply to relator's attempts to investigate the grievance filed on behalf of Hagemann.

{¶ 12} The panel concluded that these actions, inactions, neglects, and omissions of respondent violated DR 1-102(A)(3) (engaging in illegal conduct involving moral turpitude), 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice), and 1-102(A)(6) (engaging in conduct adversely reflecting on an attorney's fitness to practice law), 6-101(A)(3) (neglecting an entrusted legal matter), 7-101(A)(1) (failing to seek the lawful objectives of a client), 7-101(A)(2) (failing to carry out a contract of employment), 7-102(A)(5) (making a false statement of law or fact), 7-106(A) (disregarding a rule or ruling of a tribunal), and 9-102(B)(4) (failing to pay or deliver funds, securities, or other properties at the request of the client that the client is entitled to have).

**{¶ 13}** In mitigation, respondent, who has been drinking since high school, attributes some of the disciplinary violations to alcoholism. Respondent is undergoing treatment for that condition, is a member of Alcoholics Anonymous ("AA"), and has been alcohol-free for at least two hundred fifty-four days. Respondent has also taken care of financial matters with those who filed grievances against him, and cooperated with relator in the execution of the stipulations.

**{¶ 14}** The panel recommended that respondent be suspended from the practice of law for two years, with one year of the suspension stayed on the condition that respondent make restitution, if any, as determined by relator; that he enter into an arrangement with the Ohio Lawyers Assistance Program ("OLAP") relating to his treatment for alcoholism and/or substance abuse, if any; that he abstain from alcohol and drugs; that he be subject to random testing by OLAP; that he attend AA meetings and any other recovery program recommended by OLAP; and that his OLAP monitor report periodically to relator about respondent's compliance. The board adopted the findings, conclusions, and recommendation of the panel.

————————————

*Jonathan E. Coughlan,* Disciplinary Counsel, and *Harald F. Craig III*, Assistant Disciplinary Counsel, for relator.

*David C. Maxwell*, *pro se.*

————————————

**Per Curiam.**

**{¶ 15}** We adopt the findings, conclusions, and recommendation of the board. Respondent is hereby suspended from the practice of law for two years, with one year of the suspension stayed on the condition that respondent make restitution, if any, as determined by relator; that he enter into an arrangement with the Ohio Lawyers Assistance Program ("OLAP") relating to his treatment for alcoholism and/or substance abuse; if any; that he abstain from alcohol and drugs;

that he be subject to random testing by OLAP; that he attend Alcoholics Anonymous meetings and any other recovery program recommended by OLAP; and that his OLAP monitor report periodically to relator about respondent's compliance. These conditions shall be in effect during the entire two-year period, and restitution is to be made prior to respondent's seeking a stay of the second year of suspension. Costs taxed to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____